UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA**

vs.  Case No. 8:07-CR-244-T-27MAP

**JUAN RODRIGUEZ**

_____/

ORDER ON DEFENDANT'S MOTION FOR NEW TRIAL

**BEFORE THE COURT** is Defendant's Motion for New Trial and Renewed Motion for Judgment of Acquittal (Dkt. 88) and the Government's Response in opposition (Dkt. 91).[1] Upon consideration, Defendant's motion is DENIED.

Defendant was charged in Count One of a four count Indictment (Dkt. 1) with possession with intent to distribute 500 grams or more of methamphetamine. After a jury trial, Defendant was convicted. (Dkt. 82). In the instant Motion for New Trial and Renewed Motion for Judgment of Acquittal, Defendant contends that he is entitled to a new trial "in the interest of justice" pursuant to Rule 33(b)(2).

**Rule 33 motion:**

Rule 33 provides that "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." Motions for new trials are granted sparingly, with caution, and only in exceptional cases. *United States v. Martinez*, 763 F.2d 1297, 1313 (11th Cir. 1985). The interests of justice do not warrant a new trial in this case.

---

[1] As the central issue is whether Defendant was entitled to have the identity of the Government's confidential source disclosed, the Government's unredacted response to Defendant's Motion for New Trial has been sealed, as has the confidential informant's criminal history. (Dkt. S-___)

Defendant's Rule 33 argument arises from the involvement of a confidential source in the methamphetamine transaction which ultimately resulted in Defendant's indictment. The confidential source, in cooperation with Polk County Sheriff's Detectives, set up a two pound methamphetamine purchase with Jorge Antonio Funez, Defendant's co-defendant. The confidential source, under surveillance by law enforcement, met with Funez at a pre-arranged location in Polk County. Funez was driving an SUV which belonged to Defendant's wife. Defendant was sitting in the front passenger seat.[2] When the source inquired as to whether Funez had the "stuff" Defendant held up a plastic container containing the methamphetamine for the source to see. While leaning into the SUV, the source observed a firearm, which he subsequently reported to law enforcement. Funez and the source agreed to make the exchange at another location and the SUV left the parking lot. Shortly thereafter, law enforcement stopped the SUV and arrested Funez and Defendant. Inside the SUV, in a holster tucked between the driver's seat and console, the detectives found a .38 caliber firearm They also found .38 caliber bullets in Defendant's pocket, which he claimed were handed to him by Funez.

Prior to trial, Defendant sought the identity of the confidential source pursuant to *Roviaro v. United States*, 353 U.S. 53 (1957). (Dkts. 33, 41, 54). Defendant's pre-trial motions for disclosure were denied without prejudice. (Dkts. 39, 52). During trial, Defendant renewed his motion and an *in camera* hearing was conducted, during which the confidential informant testified *ex parte* and the Government proffered the reasons justifying non-disclosure of the informant's identity. Defendant's motion for disclosure was denied. (Dkts. 76, 77).

Funez testified as a Government witness. During his testimony, the Court advised counsel

---

[2] Two individuals were in the back seat but were not charged in this case.

-2-

that it perceived inconsistencies between what Funez described as having taken place when the confidential source approached the SUV and what the source had described during the *in camera* hearing. The parties were provided with a redacted transcript of the informant's *in camera* testimony and advised by the Court that in light of the inconsistencies, disclosure of the informant's identity may be warranted. Thereafter, the parties entered into a stipulation which summarized the confidential source's testimony relative to what he heard and observed when he approached the SUV and spoke with Funez. (Dkt. 85, Ex. 2). The Stipulation was read to the jury at the parties' request.

According to the parties, at some point after closing argument and while the jury was deliberating, defense counsel overhead a conversation between government counsel and the Court's courtroom security officer concerning the necessity of keeping the confidential source at the courthouse. Defense counsel inferred from this question that the confidential source was in custody, "presumably" on new charges.[3] In his Rule 33(b)(2) argument, Defendant contends that "the court and the government withheld critical information about the confidential source being in custody when considering the admissibility of the confidential source's in camera testimony." Defendant argues that he was entitled to this information under *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Bagley*, 473 U.S. 667 (1985) and *Giglio v. United States*, 405 U.S. 150 (1972).

To obtain a new trial, Defendant must show (1) that the Government withheld favorable evidence, including impeachment evidence, (2) that he did not possess the evidence and could not

---

[3] As established during the *in camera* hearing, the confidential source's custodial status was not, as Defendant supposes, the result of "presumably" new criminal charges. Moreover, the Government's concern about revealing any information about the confidential source, including his custodial status, is well taken. As the evidence established, the area in which Defendant, Funez and the confidential source resided and the methamphetamine transaction took place is a small community where people generally know of one another. Revealing who was in jail and for what reason may have identified the confidential source. Defendant's contention that disclosure of "the source's status of confinement and the reasons therefore . . . could have been done without revealing the source's identity" is not, under the circumstances of this case, persuasive. (Dkt. 88, p. 6).

have obtained it with reasonable diligence, and (3) that had the evidence been revealed, there is a reasonable probability that the outcome of the proceedings would have been different. *United States v. Perez*, 473 F.3d 1147, 1150 (11th Cir. 2006), *cert. denied*, 127 S.Ct. 2147 (2007). Defendant's argument fails because the confidential source's custodial status was not material to Defendant's guilt or innocence and was not exculpatory or favorable to him. Its non-disclosure certainly did not prejudice Defendant and there is no reasonable probability that the outcome of the proceedings would have been different if the information had been disclosed.[4] Finally, its non-disclosure does not undermine confidence in the outcome of the trial.

Implicit in Defendant's argument is that he may have used this information to impeach the confidential source, presumably to buttress his "mere presence" defense. Assuming, for purposes of this motion, that the source's custodial status could have been used for impeachment, and assuming that the Government had been ordered to disclose the confidential source's identity, Defendant has not established that the source's custodial status was material. As the Government correctly argues, the *in camera* testimony of the confidential source was favorable to Defendant because it supported Defendant's "mere presence" defense. Impeaching the confidential source would have undermined his credibility and thereby undermined the "mere presence" defense.

Stipulating to what the confidential source testified to was a calculated decision by Defendant. That decision was necessarily premised on certain unknown aspects of the confidential

---

[4] In his motion, Defendant cites *Brady v. Maryland, supra*, presumably for the contention that the Government failed to disclose favorable information. As discussed, the confidential source's custodial status and criminal history was not favorable information.

source, including not just his identity but his custodial status and criminal history.[5] Defendant's suggestion that he would not have entered into the Stipulation if he had known that the confidential source was in custody and available to be interviewed is therefore unpersuasive and illogical. Moreover, it was to Defendant's benefit to have the confidential source's testimony essentially scripted, since it confirmed that the source spoke only with Funez and was silent as to whether Funez directed Defendant to show the container to the source.[6] This left Defendant's statement to Detective Angulo that he showed the container to the source at Funez' direction unrebutted.

Defendant entered into the Stipulation only after the Court expressed concerns that disclosure of the confidential informant's identity may be warranted based on inconsistencies between the informant's *in camera* testimony and Funez' trial testimony. Before the Stipulation was signed, Defendant and counsel were pointedly cautioned by the Court to carefully consider any decision to stipulate to what the confidential source would testify to, given the *Roviaro* issues which had been litigated. Notwithstanding that caution, Defendant, with experienced counsel's advice, decided not to press for disclosure of the informant's identity and instead stipulated to a favorable summary of the source's testimony. Defendant's calculated decision to enter into the Stipulation rather than press for disclosure of the informant's identity was a tactical decision which cannot now support his motion for new trial.

---

[5] Notwithstanding that during the suppression hearing, Detective Meese testified that the confidential source had two grand theft convictions, Defendant did not request a cautionary jury instruction incident to the Stipulation directing the jury "to examine his testimony with 'great care and caution,'" as was done in *United States v. Hamaker*, 455 F.3d 1316, 1328 (11th Cir. 2006),

[6] As counsel notes, one of the reasons she agreed to the Stipulation was because it was silent as to whether Funez had directed Defendant to lift the container and the confidential source's *in camera* testimony was that Defendant lifted the container without being told to do so by Funez. This reasoning demonstrates a deliberate trial tactic to accept the Stipulation in lieu of pressing for disclosure of the informant's identity.

Finally, the confidential informant's custodial status and criminal history cannot be said to be "material," such that its non-disclosure warrants a new trial. Such evidence is considered "material" "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. at 682. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

Here, the non-disclosure of the confidential source's custodial status and criminal history does not undermine confidence in Defendant's conviction. As discussed, the confidential source's testimony supported a "mere presence" defense, on which the jury was instructed. The jury rejected that defense, however, finding that Defendant was a knowing participant in the transaction notwithstanding the confidential source's stipulated testimony that he never spoke with Defendant. The jury's verdict is supported by the evidence. The SUV driven by Funez belonged to Defendant's wife. The plastic container containing the methamphetamine was found by the arresting officers under a floor mat on the front passenger side where Defendant was sitting. Funez testified that Defendant had been selling him small amounts of methamphetamine for several months. Finally, the Government introduced Defendant's post *Miranda* statements through Detective Angulo. In that interview, Defendant admitted to Angulo that he held up the plastic container containing the methamphetamine for the confidential source to see. Placing before the jury the custodial status of the confidential source would not have diminished the strength of the Government's case and the resulting confidence in the jury's verdict.

Lastly, the materiality of non-disclosed information must be considered collectively, not "item by item." *Kyles v. Whitley*, 514 U.S. at 436. Ultimately, therefore, the materiality of the confidential source's custody status and criminal history must be considered in the context of whether non-disclosure of the confidential source's identity was proper under *Roviaro*. In this regard, Defendant takes no issue with the Court's *Roviaro* determination or the procedures followed in making that determination. It cannot be said, therefore, that failure to disclose the source's custodial status or criminal history was material in a *Roviaro* context.

**Renewed Rule 29 motion:**

Defendant also renews his motion for judgment of acquittal made pursuant to Rule 29(c). In his renewed Rule 29(c) motion, Defendant contends that the evidence was insufficient to support a finding that Rodriguez possessed with intent to distribute a quantity of methamphetamine in excess of 500 grams. Defendant first argues that notwithstanding the "abstract sufficiency" of the evidence, because of contradictions in the evidence, a new trial should be granted in the interest of justice. This Court disagrees. New trial motions challenging the weight of the evidence are granted sparingly, and only where the credibility of the Government's witnesses has been impeached and the government's case marked by "uncertainties and discrepancies." *See United States v. Martinez*, 763 F.2d at 1313.[7]

Notwithstanding the inconsistencies in Funez' testimony pointed to by Defendant, the Government's case was not marked with "uncertainties and discrepancies." Funez was subject to

---

[7] In considering a motion for new trial based on the weight of the evidence, the evidence is not viewed in the light most favorable to the government. *United States v. Martinez*, 763 F.2d at 1312. Rather, the evidence is weighed and the credibility of the witnesses may be considered. *Id.* In this Circuit, before such a motion is granted, "[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Martinez*, 763 F.2d at 1313; *see also United States v. Cox*, 995 F.2d 1041, 1044 (11th Cir. 1993).

thorough cross examination and his credibility effectively challenged. Assessing his testimony with all of the other evidence, it was believable. According to Funez, the source, who he knew as Carlos, approached him to obtain two pounds of methamphetamine. Funez told Carlos he knew someone who could get it, who turned out to be Defendant. Funez contacted Defendant and ultimately, the methamphetamine was delivered to Defendant's house in the plastic container which Funez watched Defendant place under the floor mat of Defendant's wife's SUV. Funez contacted Carlos and they agreed to meet in the store parking lot.

The meeting in the store parking lot took place as planned. The methamphetamine was in the SUV as planned. The plastic container containing the methamphetamine was still under the front passenger floor mat where Defendant was seated, where Funez had watched Defendant place it. It is undisputed that Defendant lifted the container to show it to the source. Several baggies containing methamphetamine were found throughout the SUV, which was owned by Defendant's wife. In sum, everything the source had arranged at the behest of law enforcement occurred and the evidence pointed to Defendant as a knowing participant, not an innocent bystander. The evidence did not preponderate heavily against the jury's verdict such that it would be a miscarriage of justice to let the verdict stand. *Butcher v. United States*, 368 F.3d 1290, 1297 (11th Cir. 2004).

Defendant's second argument is that the there was insufficient evidence that Defendant possessed with intent to distribute in excess of 500 grams of methamphetamine. Defendant contends that "[t]here was absolutely no testimony connecting Juan Rodriquez to the other drugs found in the car . . . " Defendant's contention is not entirely accurate. While no witness identified the baggies found in the SUV as belonging to Defendant, there was testimony from Funez that Defendant had sold him small amounts of methamphetamine in the past. Moreover, as noted, the vehicle belonged

to Defendant's wife. Defendant's presence in the SUV placed him in possession, either actual or constructive, of the drugs found in the visor, sunglass holder, back seat and console area. According to the testimony of Detective Meese, the methamphetamine was packaged in a manner consistent with distribution. The jury could reasonably infer from all of the evidence that Defendant was a knowing participant in the transaction and find him guilty beyond a reasonable doubt. Defendant's sufficiency of the evidence argument is not persuasive.

Upon consideration, Defendant's Motion for New Trial and Renewed Motion for Judgment of Acquittal (Dkt. 88) is DENIED.

**DONE AND ORDERED** in chambers this 14th day of December, 2007.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record
U.S. Probation Office